IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GREATER YELLOWSTONE COALITION, *et al.*, ) | | |
| ) | | |
| Plaintiffs, ) | Case No. CV-08-388-E-MHW | |
| ) | | |
| v. ) | **ORDER** | |
| ) | | |
| LAWRENCE TIMCHAK, Supervisor, Caribou- ) | | |
| Targhee National Forest, in his official capacity, ) | | |
| *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |
| and ) | | |
| ) | | |
| J.R. SIMPLOT COMPANY, ) | | |
| ) | | |
| Defendant-Intervenor, ) | | |
| ) | | |
| and ) | | |
| ) | | |
| UNITED STEELWORKERS LOCAL 632, ) | | |
| ) | | |
| Proposed Intervenor, ) | | |
| ) | | |
| CITY OF POCATELLO, CITY OF CHUBBUCK, ) | | |
| CITY OF SODA SPRINGS, POWER COUNTY, ) | | |
| CARIBOU COUNTY, and BANNOCK COUNTY, ) | | |
| ) | | |
| Proposed Intervenors, ) | | |
| ) | | |
| and ) | | |
| ) | | |

**Order - 1**

| | |
|---|---|
| IDAHO FARM BUREAU FEDERATION, | ) |
| | ) |
| Proposed Intervenors, | ) |
| | ) |
| and | ) |
| | ) |
| TOWN OF AFTON, WYOMING and | ) |
| LINCOLN COUNTY, WYOMING, | ) |
| | ) |
| Proposed Intervenors. | ) |
| | ) |

Pending before the Court are Motions to Intervene filed by United Steelworkers Local 632 (Docket No. 15); City of Pocatello, City of Chubbuck, City of Soda Springs, Power County, and Caribou County (Docket No. 19); Bannock County (Docket No. 43); Idaho Farm Bureau Federation (Docket No. 47); and Lincoln County, Wyoming, and Town of Afton, Wyoming (Docket No. 66). Only Plaintiffs oppose the motions. *See* Docket Nos. 34, 54, and 63.

Also pending before the Court is the Motion for Leave to File Amicus Memorandum (Docket No. 75) filed by Ashley Creek Properties, L.L.C. Plaintiffs do not oppose the motion. *See* Docket No. 79. The Federal Defendants have not taken a position on the motion. However, Simplot opposes it. *See* Docket No. 87.

Having reviewed the record and the briefs and heard oral argument on the motions to intervene, the Court enters the following Order granting the motions to intervene and denying the amicus motion.

## MOTIONS TO INTERVENE

### A. Background

J.R. Simplot Co. ("Simplot") sought and obtained authorization from the Federal Defendants to expand their existing Smoky Canyon Mine (the "Mine") in Caribou County,

**Order - 2**

Idaho, to adjacent lease areas in anticipation that the phosphate reserves at the existing Mine will become depleted in the near future.  Currently, the Mine is the sole source of phosphate for Simplot's Don Plant in Pocatello, Idaho, which produces liquid and dry phosphate-based fertilizer used by farmers throughout North America.  *Affidavit of Dennis L. Facer* ¶¶ 3, 6 (Docket No. 11); *Affidavit of William J. Whitacre* ¶ 13 (Docket No. 12). Simplot contends that without the expansion, current phosphate reserves will be depleted by mid-2010 forcing Simplot to shut down operations at both the Mine and the Don Plant.  *Id*.

As set forth in the Complaint, Plaintiffs:  (1) seek a declaratory judgment that the Federal Defendants violated the Clean Water Act, the National Forest Management Act, the Mineral Leasing Act, and the National Environmental Policy Act in various respects; (2) request the Court to set aside the Federal Defendants' Final Environmental Impact Statement ("FEIS") and Records of Decision ("RODs") authorizing the expansion of Mine; and (3) request preliminary and permanent injunctions against the expansion.  The Court has granted Simplot's unopposed motion to intervene.  *See Order* (Docket No. 82).

The proposed intervenors seek intervention as a matter of right or, alternatively, permissive intervention.  They each assert various interests that will be impacted by any resulting delay in expansion of the Mine or, if Simplot's assertions are correct, ultimate closure of the Mine and the Don Plant in Pocatello.  The intervenors argue that there will be a loss of tax revenue, loss of wages and benefits by Simplot's employees, impact to businesses that operate in the affected communities, and impact to farmers who rely on the fertilizer produced at the Don Plant, to name just a few adverse consequences of any closure.

United Steelworkers Local 632 ("Local 632") represents over 250 employees of the Don

Plant who receive higher than average wages for the area and various employee benefits which enable them to support their families and be valuable contributors to their local communities. *Declaration of Steve C. Landon* (Docket No. 17). Local 632 contends that there are not enough manufacturing jobs in the Pocatello area to absorb all the employees who would lose their jobs should the Don Plant close down.

Looking at the threat of the Mine closure from another perspective, the Idaho Farm Bureau Association ("Farm Bureau") seeks to protect its members from the adverse impact on their farming operations and families should their local source of good quality fertilizer disappear. *Affidavit of Rick Keller* (Docket No. 49). The Farm Bureau represents 38 independent county Farm Bureaus consisting of 63,000 members. Several members have filed supporting affidavits expressing their unique experiences and concerns. *See generally Affidavits* (Docket Nos. 49-53). These farmers all speak to the difficulties they are already experiencing with the increasing price of fertilizer. They anticipate that the difficulties will only worsen if the local supply of quality fertilizer is no longer available.

The Idaho and Wyoming city and county intervenors assert that not only is there the direct impact of job loss on Simplot's employees should the Mine and Don Plant close, but also the indirect detrimental impact on the housing market and the businesses that supply goods and services to Simplot's facilities and their employees. Additionally, the communities point to the fact that if the Simplot operations close down, they will suffer a loss of tax revenues and mining lease revenues. *See generally Affidavits* (Docket Nos. 21-24, 26, 38-40, 42, 44, and 68-70). Significantly, several of the affiants have witnessed the detrimental economic ripple effect of the closure of the FMC phosphate plant in Pocatello in 2001.

**Order - 4**

B.  **Discussion**

Fed. R. Civ. P. 24(a) provides for intervention as of right if certain requirements are met. In relevant part, the rule provides:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As stated by the Ninth Circuit, in order to qualify for intervention as of right, a moving party must meet the following guidelines:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*DBSI/TRI IV Ltd. Partnership v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006) (quoting *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)).

Rule 24(a) is to be construed liberally in favor of the moving party and guided by practical and equitable considerations rather than technical distinctions. *Southwest Center*, 268 F.3d at 818. *See also United States v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002). In evaluating a motion to intervene, a court should take as true "absent sham, frivolity or other objections" all well pled, nonconclusory allegations in the motion, proposed answer, and supporting declarations. *Southwest Center*, 268 F.3d at 820.[1]

---

[1] In an action brought solely under NEPA, private parties may not intervene as of right in the merits phase of a proceeding because they do not have a "significant protectable interest" given that only the government can be liable in a NEPA compliance action. *Kootenai Tribe v. Veneman*, 313 F. 3d 1094, 1108 (9th Cir. 2002). However,

Order - 5

Plaintiffs object to intervention primarily on the grounds that it would unnecessarily complicate the proceedings and that the intervenors' interests would be adequately protected by Simplot. *See* Docket Nos. 34 and 54. However, Plaintiffs also object to Farm Bureau's intervention on the ground that the Farm Bureau fails to establish sufficient protectable interest for intervention. *See* Docket No. 63. The Court has carefully considered Plaintiffs' objections but finds that the intervenors qualify for intervention as of right by meeting the four guidelines enunciated above.

### 1.     Timeliness

Although the various motions and proposed answers were filed at different times, they were all filed well before the preliminary injunction hearing, and Plaintiffs have responded to each motion. In response to Plaintiffs' concerns that allowing intervention would unduly complicate the proceedings, counsel for the intervenors filed a single brief in opposition to the preliminary injunction motion and did so prior to the preliminary injunction hearing. *See Mem. in Opp'n* (Docket No. 61).[2] Furthermore, counsel for the intervenors emphasized at oral argument that the intervenors did not want to be "a stumbling block" to this proceeding. Therefore, the intervention would not prejudice or delay the existing parties.

---

if they satisfy the requirements of Rule 24(a), they may intervene in the remedy phase or when the liability and remedy phases are joined. *Id*. Here, however, Plaintiffs' claims also involve substantive violations under the Clean Water Act and National Forest Management Act in addition to the NEPA procedural violations. Accordingly, intervention would be proper if the intervenors meet the guidelines referred to above.

   [2] Although the Wyoming governmental entities did not move to intervene prior to the filing of the other intervenors' brief in opposition to the preliminary injunction, given that the Wyoming entities are represented by the same counsel, and the impact of the closure of the Simplot facilities would be similar, the Court presumes that they would join in the single brief filed by the other intervenors.

**2.     Significant Protectable Interest**

In determining whether a moving party has a protectable interest justifying intervention, "'[i]t is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'" *Southwest Center*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)).  "An applicant demonstrates 'a significantly protectable interest' when 'the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" *Id*. (quoting *Forest Conservation Council v. United States Forest Council*, 66 F.3d 1489, 1494 (9th Cir. 1995)).

Here, taking the intervenors' allegations as true as the Court is required to do, the closure of Simplot's facilities would have "direct, immediate, and harmful effects" upon their interests in the form of lost wages and benefits, reduced tax revenues, reduced real estate values, increased fertilizer costs, and other forms of economic loss as described in their motions and affidavits.  Indeed, the Ninth Circuit has implicitly recognized such economic losses as being significant protectable interests when it found that similar losses suffered by intervenors must be considered when balancing the harms in a preliminary injunction proceeding.  *See Lands Council v. McNair*, 537 F.3d, 981, 1004 (9th Cir. 2006) (en banc) (finding potential need to lay off some or all employees as well as "other indirect harm to the struggling local economy" alleged by intervenors to be  relevant considerations when balancing competing hardships in an environmental action).[3]

---

[3] Plaintiffs focus their argument that Farm Bureau does not have a sufficient interest in this proceeding by questioning the foundation for assertions of national and international impact of any closure of Simplot's facilities.  However, Farm Bureau also speaks to the impact on the local economy with which its members have a direct interest.  The Court finds that this is a sufficient protectable interest.

**Order - 7**

### 3. Impairment of Ability to Protect Interest

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Committee's Notes.  Unless made a party, a proposed intervenor cannot protect its interests by arguing against the propriety and scope of injunctive relief or by challenging an injunction already in effect. *Forest Conservation Council*, 66 F.3d at 1498 (citations omitted). Therefore, absent intervention, its interests are effectively impaired.

Simplot has made the Court aware generally of the potential economic loss to its employees and their communities.  However, unless made parties, the intervenors will lose the opportunity to make the Court aware – before consideration of the preliminary injunction motion – of the specific extent of the impact of any closure on their respective interests.  Should the requested injunction be imposed without the intervention, the intervenors will have lost the opportunity to protect their interests. *Id*. (citations omitted).

### 4. Inadequacy of Representation by Existing Parties

As stated above, Plaintiffs argue that the intervenors' interests will be adequately represented by Simplot given that Simplot and the intervenors have the common goal of opposing the injunction and the setting aside of the FEIS and RODs.  The Court notes, as do Plaintiffs, that Simplot has argued both direct and indirect impacts of closures on individuals and communities. *See, e.g., Affidavit of William Whitacre* ¶ 5 (lost wages and benefits for mine employees), § 6 (significant disruption of fertilizer market), § 7 (lost wages and benefits for Don Plant employees), § 9 (reduction in property taxes), ¶ 10 (lost mineral lease royalty payments), ¶ 11 (lost goods and services purchased from local communities), and § 19 (effects on

**Order - 8**

employees, local communities, vendors and suppliers, and ultimately the American farmer).

While it is true that Simplot has put before the Court numerous facts and figures regarding potential impacts beyond its own financial interests, it has done so by arguing general rather than specific impacts that will be experienced by the intervenors. In other words, Simplot knows how much it expends on wages, benefits, taxes, contributions, and the like. However, it cannot speak specifically to matters such as the affect of lost wages and benefits on the employee and his or her family, the affect of lower tax revenue on the communities' schools and roads, and the drain on the resources of the communities until the employees are retrained and re-employed. Indeed, who better to address those issues than the individuals who will be affected and the individuals who have experienced the affects of the closure of the FMC plant. As the intervenors' counsel observed at oral argument, the Federal Defendants and Simplot are primarily concerned with arguing the technical benefits of the cover design. Only the intervenors in their various capacities can portray an arguably more complete picture of the impact of the potential closure of the Mine and the Don Plant.[4]

C. **Conclusion**

Liberally construing Fed. R. Civ. P. 24(a), the Court finds that the intervenors have met the test for intervention as a matter of right. However, alternatively, the Court finds that

---

[4] *See, e.g., Affidavit of Steven Landon* (Docket No. 17) (stating there are not enough manufacturing jobs in the Pocatello area to absorb all employees who would lose their jobs); *Affidavit of Michael Swore* (Docket No. 50) (advising that his experiment with using less fertilizer to cut costs at his farming operation resulted in reduction in both the quality and quantity of his crops); *Affidavit of Scott Bird* (Docket No. 52) (advising that the loss of the effluent water from the Don Plant that he uses to irrigate his crop land would result in the loss of 500 acres of irrigated crop land); *Affidavit of Gynii A. Gilliam* (Docket No. 21) (participated in the effort to retrain and re-employ displaced FMC employees locally); *Affidavit of Roger Chase* (Docket No. 22) (dealt with problems as Mayor of Pocatello resulting from the closure of the FMC plant); *Affidavit of Power County Commissioners* (Docket No. 26) (noting the large shortfall in tax revenues and substantial economic repercussions when FMC's plant in Power County closed).

**Order - 9**

permissive intervention is appropriate pursuant to Fed. R. Civ. P. 24(b) which requires only that an intervenor's claim or defense share a common question of law or fact with the main action and that the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).  *See also Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).  If the common question of law or fact is shown, intervention is discretionary with the Court.  *Id.*  (noting permissive intervention was appropriate because "the presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case, which impacted large and varied interests.") *Id.* at 1111.

As the Court did in *Kootenai Tribe*, this Court finds that the intervenors represent "large and varied interests" whose unique perspectives would aid the Court in reaching an "equitable resolution" in this proceeding.  Furthermore, as stated above, the intervenors filed their motions in a timely fashion and submitted briefing on the preliminary injunction motion well in advance of the hearing.  Also, the Court permitted all parties, including the intervenors, to present argument on the merits of the preliminary injunction at the hearing in Pocatello, Idaho on November 4, 2008.  Therefore, resolution of the motion will not be delayed because of the need for any further oral argument from the intervenors.  Accordingly, permissive intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties."  *See id.* n.10 (citing Fed. R. Civ. P. 24(b)(2)).

## MOTION FOR LEAVE TO FILE AMICUS MEMORANDUM

Ashley Creek Properties, L.L.C. ("Ashley Creek") seeks leave to file an amicus brief in support of Plaintiffs' preliminary injunction motion.  Ashley Creek contends that the FEIS authorizing the expansion of Smoky Canyon Mine is inadequate because it fails to give "proper

consideration" to a known alternative source of supply of phosphate concentrate available to the Don Plant. *Ashley Creek Mem.* at 3 (Docket No. 75-2).[5]  Ashley Creek offers this information to rebut Simplot's claims that an injunction would require it to close the Don Plant with resulting "unthinkable economic consequences for Idaho." *Id*. at 2.

Ashley Creek contends that rather than close the Don Plant should the Mine expansion be denied, Simplot could utilize the selenium-free phosphate ore from phosphate fields in Vernal, Utah, some of which are controlled by Ashley Creek and some of which are controlled by Simplot. *Id*. at 5. Simplot currently supplies its Rock Springs, Wyoming, plant with phosphate via its pipeline between Vernal and Rock Springs which Ashley Creek contends Simplot could transport from Rock Springs to Pocatello by rail. *Id*. at 2.

Finally, Ashley Creek contends that it has information and knowledge on the subject "not possessed by present plaintiffs, and which Simplot has motive to conceal." *Id.* at 5. It justifies its attempt to insert itself into this case as follows:

> Simplot claims that it has no *practical* alternative thus, as a *practical* matter, it must close the Don Plant, tilting the balance of hardships on preliminary injunction in its favor. This is simply false, and anyone having knowledge of the matter has standing as *amicus* to being (sic) the matter to the attention of the Court. The sole effect on this Motion of failure of the FEIS to consider the Vernal reserves as an alternative for purposes of NEPA, is that no economic analysis has been performed which permits Simplot or the agencies to claim that, as a practical matter, the Vernal alternative is comparatively uneconomic.

*Ashley Creek's Amicus Mem.* at 11 (Docket No. 76) (emphasis in original).

Simplot strongly opposes the amicus motion on the grounds that Ashley Creek, an

---

[5] Ashley Creek makes a similar claim in the related action of Ashley Creek v. Timchak, CR-08-412-E-BLW.

**Order - 11**

admitted "supporter and substantial contributor to the efforts of GYC," is merely making the same claims as Plaintiffs advance in their Reply brief, is motivated by its own economic interests, and is asserting the same challenge to the Smoky Canyon mine that it unsuccessfully made to the permitting of another southern Idaho phosphate mine. *Simplot's Opp'n to Amicus Mot.* at 2 (Docket No. 87). Indeed, that challenge was rejected by this Court and on appeal. *See Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934 (9th Cir. 2005) (finding that a party having purely economic injury with no environmental interest in the subject of the mining proposal under consideration has no standing to bring a NEPA challenge).

In its Reply, Ashley Creek appears to concede that the issue of whether the Vernal reserves should have been considered in the FEIS as alternative reserves is not before this Court in this case. *Reply* at 10-11. Rather, it contends that the only issue is whether Simplot has a practical alternative to closing the Don Plant that should be considered by the Court in balancing the hardships of the parties in the preliminary injunction proceeding. *Id*.

"The privilege of being heard amicus rests in the discretion of the court which may grant or refuse leave according as it deems the proffered information timely, useful, or otherwise." *Community Ass'n for Restoration of Environment (CARE) v. DeRuyter Bros. Dairy*, 54 F.Supp.2d 974, 975 (E.D.Wash. 1999) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982)). Leave to file an amicus brief should be denied unless a party is not represented competently or at all, a decision in the present case may affect the interest of the amicus in another case in which he has an interest, or the amicus has "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Id*. (citing *Northern Sec. Co. v. United States*, 191 U.S. 555, 556 (1903)).

**Order - 12**

The Court finds that Ashley Creek does not meet any of the criteria to justify amicus status.  First, Plaintiffs are represented by competent counsel who advanced the same argument in its Reply brief filed the same day as the amicus motion.  *See Pls.' Reply* (Docket No. 78).  Second, any decision on whether the issue of an alternative source of phosphate should be factored into the balance of hardships is irrelevant to Ashley Creek's related case challenging the failure of the FEIS to address the Vernal reserves as an alternative source.  Finally, Ashley Creek does not have "unique information or perspective" since Plaintiffs have presented the same information and attached the same documents to its Reply as Ashley Creek presented with its motion.  *See Pls.' Reply* at 24-25; Ex. K, Ex. L, and Ex. M (Docket Nos. 78, 78-6, 78-7, and 78-8).  Accordingly, Ashley Creek's amicus motion shall be denied.

The Court's decision to deny the motion is reinforced by other language in *CARE* which Ashley Creek failed to cite:

> Historically, amicus curiae is an *impartial* individual who suggests the interpretation and status of the law, gives information concerning it, and advises the Court in order that justice may be done, *rather than to advocate a point of view so that a cause may be won by one party or another*.

*CARE*, 54 F. Supp. 2d at 975 (citation omitted) (emphasis added.)  Clearly, Ashley Creek's motivations appear to be driven by economic rather than by environmental concerns, and just as clearly, Ashley Creek is advocating a point of view that the preliminary injunction issue.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motions to Intervene filed by United Steelworkers Local 632 (Docket No. 15); City of Pocatello, City of Chubbuck, City of Soda Springs, Power County, and Caribou County (Docket No. 19); Bannock County (Docket

**Order - 13**

No. 43); Idaho Farm Bureau Federation (Docket No. 47); and Lincoln County, Wyoming, and Town of Afton, Wyoming (Docket No. 66) are GRANTED.

IT IS FURTHER HEREBY ORDERED that the above-named Intervenors file their proposed answers to the Complaint at this time.

IT IS FURTHER HEREBY ORDERED that Ashley Creek Properties, L.L.C.'s Motion for Leave to File Amicus Memorandum (Docket No. 75) is DENIED. The Clerk of Court shall strike Ashley Creek's Amicus Memorandum (Docket No. 76) from the record.



DATED: November 13, 2008

Honorable Mikel H. Williams
Chief United States Magistrate Judge

**Order - 14**